IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STAR NUMBER, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| LIBERTY WIRELESS f/k/a | ) | |
| TELEPLUS WIRELESS, CORP. | ) | Civil Action No. 07- |
| and TELEPLUS WORLD, CORP., | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff Star Number, Inc. ("Star Number"), by its attorneys, complains against defendants Liberty Wireless f/k/a TelePlus Wireless, Corp. ("TelePlus Wireless") and TelePlus World, Corp. f/k/a TelePlus Enterprises, Inc. ("TelePlus World"), and states:

1. This case is an action for breach of contract arising out of an Asset Purchase Agreement (including all schedules and exhibits thereto, the "APA") pursuant to which TelePlus Wireless agreed to purchase certain assets related to the business of selling pre-paid and post-paid mobile wireless communications services under the name "Liberty Wireless" (the "Assets") from Star Number for $1.9 million. TelePlus Wireless paid Star Number $1.4 million less the estimated amount of pre-paid deposits collected by Star Number prior to the closing for service to be provided after the closing (the "Initial Payment") at the closing and executed a Promissory Note (the "Note") for $500,000 in favor of Star Number to secure TelePlus Wireless's remaining payment obligations under the APA. TelePlus Wireless also executed a Security Agreement (the "Security Agreement") in favor of Star Number, granting to Star Number a continuing lien on, and security interest in, the Assets to secure all of TelePlus Wireless's payment obligations under the Note. TelePlus World also executed a Guaranty Agreement (the "Guaranty") in favor of Star Number to ensure that TelePlus Wireless met its payment obligations under the Note. Star Number has conveyed title of the Assets to TelePlus Wireless, but to date, TelePlus Wireless has only paid Star Number $250,000 of the amount due under the Note. The complaint seeks a judgment against TelePlus Wireless under the APA, the Note, and the Security Agreement, or in the alternative, against TelePlus World under the

Guaranty, for the remaining unpaid balance of $250,000, plus late charges and interest, due to Star Number.

## PARTIES

2. Star Number is a Delaware corporation with its principal place of business in Reston, Virginia.

3. TelePlus Wireless is a Nevada corporation with one of its principal places of business in Miami, Florida. TelePlus Wireless is a wholly-owned subsidiary of TelePlus World.

4. TelePlus World is a Nevada corporation with one of its principal places of business in Miami, Florida.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332. Venue and personal jurisdiction are proper in this Court pursuant to Section 15.11 of the APA, which provides that if federal jurisdiction over a dispute arising out of the APA is proper, then such dispute will be subject to the exclusive jurisdiction of the United States District Court for the District of Delaware with venue in the division thereof in which New Castle County is located. That section further provides that the parties thereto "irrevocably and unconditionally consent[] to the personal and exclusive jurisdiction and venue of said court[]...."

## FACTS

The APA

6. On or about December 29, 2005, Star Number and TelePlus Wireless entered into the APA. A true and correct copy of the APA is attached hereto as Exhibit A.

7. Section 2.1 and Schedule 2.1 of the APA set forth the particular Assets to be purchased under the APA. All rights, title, benefits, and interest of Star Number in the Assets were to be transferred to TelePlus Wireless as of 11:59 p.m. (EST) on December 31, 2005 (the "Closing Effective Time").

8. Section 3.1 of the APA provided that TelePlus Wireless would pay a purchase price of $1,900,000 for the Assets.

9.   Section 3.1(a) of the APA provided that the Initial Payment would be paid in cash by TelePlus Wireless on December 29, 2005.

10.   Section 3.1(b) of the APA provided that the remaining $500,000 of the purchase price was to be paid in four equal successive quarterly cash installments of $125,000 each (each, an "Installment Payment"), subject to adjustment as described in paragraph 12 of this complaint. The first Installment Payment was to be due 90 days after the December 29, 2005 closing date. The obligation to make the Installment Payments was to be evidenced by a promissory note secured by liens on the Assets.

11.   Section 3.3(a) of the APA provided that any pre-paid customer deposits collected by Star Number prior to the transfer of the Assets for wireless service to be provided after the transfer would be subtracted from the purchase price at the Closing Effective Time (the "Deposit Adjustment"). Schedule 2.1 of the APA identified the estimated amount of such pre-paid deposits as "approximately $847,000." Therefore, a Deposit Adjustment of $847,000 was credited against the purchase price and the Initial Payment was reduced accordingly.

12.   Section 3.3(b) of the APA provided that TelePlus Wireless was to acquire at least 22,000 active customers in connection with its purchase of the Assets. The purchase price was to be reduced by $95 for each customer less than 22,000 TelePlus Wireless acquired in connection with the transaction (in the aggregate, the "Customer Adjustment"). The number of customers that Star Number transferred exceeded 22,000 and, therefore, no Customer Adjustment was required to be made.

13.   Section 10.6 of the APA provided that in order to fund any indemnification claims by TelePlus Wireless under Article 10 of the APA, TelePlus Wireless would be entitled to set off the amount of such claims against amounts owing by it to Star Number, provided that any such set-off was made in accordance with that Section 10.6. TelePlus Wireless was required to provide 5 days' prior written notice of its intention to claim a set-off, and such notice was to include all available particulars of the claim and a detailed calculation of amounts TelePlus Wireless believed were owing to it under Article 10 of the APA. Pending the resolution of any disputed claim under Section 10.6, TelePlus Wireless was entitled to withhold the amount of such claim from any payment due under Section 3.1 of the APA.

The Note

14.   On or about December 29, 2005, TelePlus Wireless executed the Note in the amount of $500,000 to secure the Installment Payments. A true and correct copy of the Note is attached as Exhibit B.

15. Section 2 of the Note provided that the quarterly Installment Payments were to be made no later than each of March 31, 2006, June 30, 2006, September 30, 2006, and December 31, 2006.

16. Section 4 of the Note provided that TelePlus Wireless would pay a 5% late charge on any scheduled Installment Payment that was not paid within 15 days after the payment was due.

17. Section 1 of the Note provided that if an event of default occurred under the Note, TelePlus Wireless would be liable for interest on any unpaid Installment Payments at a fixed rate of 1% plus the prime rate. The Note defined an event of default to include the failure by TelePlus Wireless to make any Installment Payment when due, and the failure by TelePlus Wireless to pay any late charges or fees under the Note within 10 days after written request from Star Number.

18. The Note did not provide a mechanism that would entitle TelePlus Wireless to set off amounts that it disputed or for which it claimed a right to be indemnified under the APA against, or to withhold such amounts from, amounts owed by it to Star Number under the Note.

The Security Agreement

19. On or about December 29, 2005, TelePlus Wireless executed the Security Agreement to secure all of its payment obligations and "all other undertakings" under the Note. The Security Agreement granted to Star Number a continuing lien on, and security interest in, the Assets. A true and correct copy of the Security Agreement is attached as Exhibit C.

20. Section 4.1 of the Security Agreement provided that TelePlus Wireless would be in default under the Security Agreement if, among other things, it failed to pay when due any of its obligations thereunder, including payment of amounts owed under the Note, and if TelePlus World failed to obtain the consent of the first-priority lienholder, Cornell Capital Partners, LP ("CCP"), to the execution by TelePlus Wireless of the Security Agreement or the execution by TelePlus World of the Guaranty, within 30 days of such executions.

21. Section 4.2 of the Security Agreement provided that upon the occurrence of an event of default, Star Number would have the right to "assemble, sell, take possession of, send notices, and collect directly the [Assets], with or without judicial process," as well as to exercise all other rights granted to it under the Uniform Commercial Code ("UCC") and other applicable laws.

22. On or about January 4, 2006, Star Number perfected its security interest in the Assets by filing a UCC Financing Statement with the Office of the Secretary of State of Nevada.

The Guaranty

23. On or about December 29, 2005, TelePlus World executed the Guaranty to secure TelePlus Wireless's payment obligations under the Note. A true and correct copy of the Guaranty is attached as Exhibit D.

24. Section 1 of the Guaranty provided that upon written notice to TelePlus World of TelePlus Wireless's failure to pay any amount owed under the Note when due, TelePlus World would "unconditionally and absolutely guarantee[] payment when due of all amounts owing by [TelePlus Wireless] under the Note...."

25. Section 5 of the Guaranty provided that TelePlus World waived presentment, demand, protest, notice of protest, and diligence in collecting any obligations thereunder. TelePlus World also acknowledged and agreed that the liabilities created under the Guaranty were direct and not conditioned upon Star Number's pursuit of any remedies against TelePlus Wireless, any other person, or any security.

TelePlus Wireless's Failure to Make Installment Payments

26. On or about December 29, 2005, TelePlus Wireless paid the Initial Payment to Star Number as required by the APA.

27. On or about December 31, 2005, Star Number transferred to TelePlus Wireless, and TelePlus Wireless assumed, control of the Assets pursuant to the APA.

28. In February 2006, Star Number informed TelePlus Wireless that the actual amount of pre-paid deposits received by Star Number in December 2005 was approximately $707,000 (the "Actual Deposit Amount"), and that the Deposit Adjustment amount of $847,000 had therefore been overestimated. Star Number requested that TelePlus Wireless pay it the approximate difference of $140,000 between those two amounts.

29. In March 2006, TelePlus Wireless paid to Star Number the difference between the Deposit Adjustment amount and the Actual Deposit Amount.

30. On or about March 31, 2006 and June 30, 2006, TelePlus Wireless paid the first two Installment Payments to Star Number as required by the APA and the Note.

1359749.1

31. TelePlus Wireless did not pay Star Number the third Installment Payment when due on September 30, 2006. The third Installment Payment remains unpaid by TelePlus Wireless.

32. On or about November 9, 2006, Star Number notified TelePlus Wireless in writing (the "November 9 Notice") that the third Installment Payment was overdue and requested that TelePlus Wireless pay the overdue amount plus the 5% late charge.

33. TelePlus Wireless did not respond to the November 9 Notice. TelePlus Wireless also did not make the requested payment within 10 days of receiving such notice.

34. On or about November 29, 2006, Star Number notified TelePlus Wireless in writing of the existence of a continuing event of default under the Note because TelePlus Wireless had not made the third Installment Payment or paid the 5% late charge or the accrued interest.

35. On or about December 1, 2006, TelePlus Wireless sent a letter (the "December 1 Letter") to Star Number denying that TelePlus Wireless was in breach of the Note because TelePlus Wireless claimed that it should not have been obligated to pay the difference between the estimated Deposit Adjustment amount and the Actual Deposit Amount. TelePlus Wireless asserted that the $140,000 it believed it was owed as a result of the allegedly improper pre-paid deposit adjustment was more than sufficient to off-set the amount of the third Installment Payment and that it was therefore not obligated to make such payment. TelePlus Wireless's letter also notified Star Number that TelePlus Wireless believed Star Number to be in breach of the APA.

36. The December 1 Letter did not comply with the terms of Section 10.6 of the APA regarding requirements precedent to TelePlus Wireless's right to claim and withhold set-off amounts.

37. On or about December 14, 2006, Star Number notified TelePlus World in writing (the "December 14 Notice") that TelePlus Wireless had failed to make the third Installment Payment when due under the Note and demanded that TelePlus World pay that obligation immediately.

38. TelePlus World did not respond to the December 14 Notice. TelePlus World has not paid the third Installment Payment to Star Number as required by the Guaranty.

39. TelePlus Wireless did not pay Star Number the fourth Installment Payment when due on December 31, 2006. The fourth Installment Payment remains unpaid by TelePlus Wireless.

1359749.1

40. On or about February 9, 2007, Star Number notified TelePlus Wireless in writing (the "February 9 Notice") that the fourth Installment Payment was overdue and requested that TelePlus Wireless pay the overdue amount plus the 5% late charge.

41. TelePlus Wireless did not respond to the February 9 Notice. TelePlus Wireless also did not make the requested payment within 10 days of receiving such notice.

42. On or about February 22, 2007, Star Number formally notified TelePlus World in writing (the "February 22 Notice") that TelePlus Wireless had failed to make the fourth Installment Payment when due under the Note and demanded that TelePlus World pay that obligation immediately.

43. TelePlus World did not respond to the February 22 Notice. TelePlus World has not paid the fourth Installment Payment to Star Number as required by the Guaranty.

## COUNT I
### (Breach of the APA and the Note by TelePlus Wireless)

44. Star Number restates and incorporates by reference paragraphs 1 through 43 of this complaint as if fully set forth in this paragraph.

45. The APA is a valid and binding contract.

46. The Note is a valid and binding contract.

47. Star Number transferred and assigned all of its right, title, interest, and benefit in the Assets to TelePlus Wireless on December 31, 2005, as required by the APA.

48. TelePlus Wireless did not make the third or the fourth Installment Payments required by the APA and the Note when they came due on September 30, 2006 and December 31, 2006, respectively.

49. To date, TelePlus Wireless still has not made either the third or the fourth Installment Payments.

50. As a result of TelePlus Wireless's failure to pay the third and fourth Installment Payments, Star Number has been damaged in the amount of $250,000, plus late charges of $12,500 and over $16,000 of interest.

1359749.1

## COUNT II

### (Breach of the Security Agreement by TelePlus Wireless)

51.     Star Number restates and incorporates by reference paragraphs 1 through 50 of this complaint as if fully set forth in this paragraph.

52.     The Security Agreement is a valid and binding contract.

53.     TelePlus Wireless did not make the third or the fourth Installment Payments required by the APA and the Note when they came due on September 30, 2006 and December 31, 2006, respectively.

54.     TelePlus Wireless's failures to make the third and fourth Installment Payments when due constitute events of default under the Security Agreement.

55.     TelePlus World's failure to obtain the consent of CCP with respect to the execution by TelePlus Wireless of the Security Agreement or the execution by TelePlus World of the Guaranty within 30 days of such executions also constitutes an event of default under the Security Agreement.

56.     To date, TelePlus Wireless still has not made either the third or the fourth Installment Payments and TelePlus World did not obtain the required consents within 30 days of the execution of the Security Agreement or the Guaranty. Therefore, TelePlus Wireless remains in default under the Security Agreement.

## COUNT III

### (Breach of the Guaranty by TelePlus World)

57. Star Number restates and incorporates by reference paragraphs 1 through 56 of this complaint as if fully set forth in this paragraph.

58. The Guaranty is a valid and binding contract.

59. TelePlus World did not make any payments to Star Number under the Guaranty after receiving written notice that TelePlus Wireless had failed to make the third or fourth Installment Payments as required by the APA and the Note.

60. To date, TelePlus World still has not paid any portion of the guaranteed obligations under the Guaranty.

61. As a result of TelePlus World's failure to pay any portion of the guaranteed obligations under the Guaranty, Star Number has been damaged in the amount of $250,000, plus late charges of $12,500 and over $16,000 in interest.

WHEREFORE, plaintiff Star Number respectfully asks the Court to enter judgment:

(i) against defendant TelePlus Wireless for breach of the APA and the Note in the amount of $250,000, plus the contractual late charge, pre-judgment interest accrued at the contractually defined rate through the date of this Court's judgment, attorneys' fees, and costs; or in the alternative

(ii) against defendant TelePlus Wireless for breach of the Security Agreement and order immediate foreclosure by Star Number on such of the Assets as have an aggregate value equal to $250,000, plus the contractual late charge, pre-judgment interest accrued at the contractually defined rate through the date of this Court's judgment and order, attorneys' fees, and costs; or in the alternative

(iii) against defendant TelePlus World for breach of the Guaranty in the amount of $250,000, plus the contractual late charge, pre-judgment interest accrued at the contractually defined rate through the date of this Court's judgment, attorneys' fees, costs; and

(iv) granting Star Number such other and further relief as the Court deems just and equitable.

Dated: June 20, 2007

ZUCKERMAN SPAEDER LLP

By_____
Thomas G. Macauley (Del. Bar No. 3411)
919 Market Street, Suite 990
Wilmington, DE 19801
Telephone: (302) 427-0400
Fax: (302) 427-8242
Email: tmacauley@zuckerman.com

-and-

CHADBOURNE & PARKE LLP

Dana Frix
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 974-5600
Fax: (202) 974-5602
Email: dfrix@chadbourne.com

Attorneys for Plaintiff, Star Number, Inc.

%JS 44  (Rev 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS<br>Star Number, Inc. | DEFENDANTS Liberty Wireless f/k/a TelePlus Wireless, Corp. and TelePlus World, Corp. f/k/a TelePlus Enterprises Inc. |
|---|---|
| (b) County of Residence of First Listed Plaintiff _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant Dade County<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) Thomas G. Macauley, Esq. Zuckerman Spaeder LLP, 919 N. Market St., Suite 990 Wilmington, DE 19801  (302) 427-0400 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | PERSONAL INJURY<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br><br>PERSONAL INJURY<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>PERSONAL PROPERTY<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>LABOR<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>PROPERTY RIGHTS<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>SOCIAL SECURITY<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>FEDERAL TAX SUITS<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| REAL PROPERTY<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | CIVIL RIGHTS<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | PRISONER PETITIONS<br>☐ 510 Motions to Vacate Sentence<br>Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332
Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 250,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE: June 20, 2007
SIGNATURE OF ATTORNEY OF RECORD: Thomas G. Macauley

FOR OFFICE USE ONLY

RECEIPT # ____    AMOUNT ____    APPLYING IFP ____    JUDGE ____    MAG. JUDGE ____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 07-393

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___2___ COPIES OF AO FORM 85.

___6/26/07___  
(Date forms issued)

___[signature]___  
(Signature of Party or their Representative)

___Thomas G. Macauley___  
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action